IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:26-CV-00758-BO-RJ

| | | |
|---|---|---|
| GRANITE RE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SKYROCK CONSTRUCTION LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on plaintiff's motion for a preliminary injunction. [DE 3]. A hearing, at which plaintiff and defendant Nana Manso appeared, was held before the undersigned on October 14, 2026, in Greenville, North Carolina. In this posture, the motion is ripe for disposition. For the following reasons, the motion for the preliminary injunction is GRANTED. [DE 3].

BACKGROUND

Plaintiff, Granite Re, is a licensed contract surety that issues performance and payment bonds on behalf of construction contractors. [DE 1, ¶¶ 10–11]. In order to secure North Carolina construction contracts, defendant, Skyrock Construction "was required to furnish performance and payment bonds issued by a corporate surety." *Id.* at ¶ 12; [DE 5, p. 3]. As a result, Skyrock Construction, Skyrock Estates, and Nana Manso ("defendants"),[1] "entered into a General Agreement of Indemnity" (the "Indemnity Agreement") with Granite Re on or about September 7, 2018. [DE 1, ¶ 14–17]; [DE 5, p. 3].

[1] Defendant Manso executed the Articles of Organization for both Skyrock Estates and Skyrock Construction LLC, and currently serves as the Managing Member of Skyrock Estates and as the Executive Manager/part owner of Skyrock Construction LLC. [DE 1, ¶¶ 2–4].

In reliance on this Indemnity Agreement, Granite Re issued "three sets of performance and payment bonds" on behalf of Skyrock Construction. [DE 5, p. 3]; [DE 1, ¶ 17]. The first of the three bonds, the Wake Tech Community College East Fire and Rescue Training Center project, has a performance bond of $1,500,000 and a payment bond of $1,500,000. [DE 1-2, p. 2–3]. The next bonds, for the Durham School of the Arts project, has a payment bond of $500,000 and a performance bond of $500,000. [DE 1-3, p. 2–3]. And, the last bonds at issue, for the GCS Allen Jay Elementary project, has a performance bond of $2,050,000 and a payment bond of $2,050,000. [DE 1-4, p. 2–5].

Granite Re has since been notified that Skyrock is considered to be in default on all three projects. [DE 5, p. 3–5]. The current total of bond claims against Granite Re due to the defaults of Skyrock Construction is around $2,474,544.25. [DE 1, ¶ 42]. However, the performance bond claim for the Wake Tech Community College project still has pending costs being reviewed, which could increase Granite Re's exposure to the "entire $1,500,000 penal sum" of the bond. *Id.* Thus, Granite Re's "total estimated exposure, inclusive of performance and payment bond claims, attorneys' fees, consultant fees, and other loss adjustment expenses, is no less than $3,000,000." *Id.*

Granite Re also received a letter from Skyrock Construction's counsel on June 5, 2026, that Skyrock Construction "was in the process of winding down its operations effective immediately." [DE 5, p. 5]. Furthermore, Granite Re, while investigating the defaults "learned that Skyrock Construction claims to have no assets available for indemnification" despite "its financial statements reflect[ing] owned assets and equipment." *Id.* Granite Re also discovered that Skyrock Estates owns real property "with a county tax assessment of approximately $900,000." *Id.*

Thus, on August 4, 2026, Granite Re "in accordance with the second and thirteenth paragraphs of the Indemnity Agreement, demanded that the Defendants provide it with collateral security in the amount of $3,000,000" and "demanded that Defendants provide Granite Re with access to books, records, accounts, and information." [DE 1, ¶ 36].

The second paragraph of the Indemnity Agreement allows for the collateral request by Granite Re as it requires that Skyrock:

> will at all times indemnify, exonerate, and save the Company harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, expense, suit, order, judgment and adjudication whatsoever, payable on the demand of the Company whether actually incurred or not…that Indemnitor shall place the Company upon demand in funds, whether or not the Company has made payment for any claim, demand, liability, loss, cost, charge, counsel fee, or expense; and whether or not the Indemnitor has previously provided collateral security to the Company to secure the Company as the Company demands in its sole discretion…

[DE 1-1, ¶ 2]; [DE 5, p. 8]. The Indemnity Agreement also allows Granite Re "the right of reasonable access to the books, records and accounts of the Indemnitor." [DE 1-1, ¶ 13].

Despite Granite Re's August 4, 2026, request that defendants comply with these provisions of the Indemnity Agreement to provide collateral and provide access to defendants' books, records, and accounts, "[n]one of the Indemnitors responded." [DE 5, p. 6]; [DE 1, ¶ 44].

Granite Re, now moves in this motion for a preliminary injunction to:

> (1) prohibit Defendants from selling, transferring, disposing of, diverting, or encumbering assets that could be pledged as collateral; (2) direct Defendants to furnish a full and complete accounting of all assets owned by Defendants, or in which any Defendant has had an interest, since September 7, 2018, and the disposition of those assets; (3) direct Defendants to provide Granite Re and its representatives full and complete access to all financial books, records, and accounts maintained by Defendants or on their behalf; (4) order Defendants to deposit $3,000,000 in collateral security pursuant to the Indemnity Agreement and the August 4, 2026 Collateral and Records Demand.

[DE 5, p. 14–15].

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Thus, Granite Re must demonstrate that the four elements of a preliminary injunction are established.

A. Likelihood of Success on the Merits

Granite Re brings three claims: (1) breach of contract and specific performance for failure to post collateral; (2) quia timet and injunctive relief; and (3) breach of contract for failure to exonerate and indemnify. [DE 1, p. 14–18].

North Carolina law defines the elements of a breach of contract claim as the "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C.App. 19, 26 (2000). Additionally, for a party to be entitled to specific performance, they must show "existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform." *Clute v. Gosney*, 290 N.C.App. 368, 372 (2023) (citation omitted).

The parties executed a valid Indemnity Agreement. [DE 1, ¶¶ 13–17]; [DE 1-1]. As part of that agreement, defendants agreed to "indemnify, exonerate, and save [Granite Re] harmless from and against every claim" and the agreement obligates defendants to "place [Granite Re] upon demand in funds." [DE 1-1, ¶ 2]. Additionally, the Indemnity Agreement requires defendants to "provide access to books, records, accounts, and requested information." [DE 5, p. 9]; [DE 1-1, ¶ 13].

Despite these contractual requirements, defendants failed to perform when Granite Re sent their August 4, 2026, demand that defendants provide $3,000,000 in collateral and access to books,

records, accounts, and information "in light of the performance bond claim, default notices, and payment bond claims Granite Re had received." [DE 1, ¶ 36]. Indeed, defendants failed to "respond, post collateral, or provide records," placing them plainly in breach of the contract. [DE 5, p. 9]. Defendants breached their obligations despite Granite Re fulfilling their own obligations by executing and furnishing the various aforementioned performance and payment bonds on behalf of Skyrock Construction. [DE 1, ¶ 17]. Lastly, sureties are "ordinarily entitled to specific performance of collateral security clauses." *First Nat. Ins. Co. of America v. Sappah Bros. Inc.*, 771 F.Supp.2d 569, 572 n.2 (E.D.N.C. 2011).

Thus, Granite Re has shown a valid contract, the terms of that contract, their performance and their willingness to continue to perform, and defendants' breach of those terms. Therefore, Granite Re has shown a likelihood of success on the merits of its breach of contract and specific performance claim. These same facts and analysis also demonstrate that Granite Re is likely to succeed on their breach of contract claim for failure to exonerate and indemnify and their claim for quia timet.

B. Irreparable Harm

Granite Re must also demonstrate that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief. *Winter*, 555 U.S. at 20. "Courts routinely recognize that a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages." *First Nat. Ins. Co. of America*, 771 F.Supp.2d at 574 (citations omitted). Sureties, like Granite Re, "hold[] a bargained-for right to collateral security and, without enforcement of such right, assumes the risk of becoming a general unsecured creditor and of being unable to collect a subsequent judgment in its favor." *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC*, No. 3:11-cv-00116, 2011 WL 4715155, at *5 (W.D.N.C. Oct. 6, 2011).

Here, Granite Re, absent an injunction, faces irreparable harm on losing out on its bargained-for right to collateral security under the Indemnity Agreement. [DE 1-1, ¶ 2].

Additionally, Granite Re, upon notice of the defaults, engaged in an investigation into the circumstances of Skyrock Construction's alleged defaults. [DE 1, ¶ 30]. Granite Re learned that Skyrock Construction "claims that it has no assets for indemnification." *Id.* This is despite Granite Re's review of Skyrock Construction's financial statements which "reported owned assets, equipment, and some equity" and Granite Re also discovered that Skyrock Estates "owns real property" with a "tax assessment of approximately $900,000." *Id.* Furthermore, Granite Re alleges that defendant Manso, after the project defaults, transferred ownership in other real property from "himself individually to himself and his wife…as joint owners." *Id.* at ¶ 31. These circumstances, as plaintiff Granite Re argues, "present [a] risk that the Indemnitors' assets will be dissipated before Granite Re can obtain and collect a judgment." [DE 5, p. 11]. If this occurs, Granite Re's contracted for rights to collateral security, exoneration and indemnity, and ability to investigate records and accounts will be "rendered practically worthless." *Id.* at 12. This is all reinforced by the fact that defendants did not respond to Granite Re's August 4, 2026, collateral and records demand, nor have they performed under the terms of the Indemnity Agreement.

Therefore, Granite Re has shown likelihood of irreparable harm if they do not get injunctive relief to secure collateral, access to defendants' records and accounts, and a prohibition against defendants selling and transferring assets that could be pledged as collateral.

C. Balance of the Equities

The balancing of equities squarely favors Granite Re. Absent the equitable relief, Granite Re could bear the losses of Skyrock Construction's default and lose the ability to obtain relief from defendants themselves. Defendants, on the other hand, would only be obligated to perform as they

had previously agreed to perform under the Indemnity Agreement by "provid[ing] collateral, records, and indemnity." [DE 5, p. 13]; [DE 1-1]; *See Waterfront Grp. NC, LLC*, 2011 WL 4715155, at *5 (holding that the balance of equities in providing an injunction to enforce a collateral security provision favored the plaintiff since the plaintiff otherwise would be forced to bear the loss while defendants would only be subject to their contractual obligations).

Thus, the balance of the equities tips in favor of Granite Re.

D. Public Interest

The last element that must be in favor of Grantie Re is that it would be in the public's interest to provide the equitable relief.

There is a strong public interest in ensuring that contracts are enforced. *UBS Painwebber, Inc. v. Aiken*, 197 F.Supp.2d 436, 448 (W.D.N.C. 2002); *Waterfront Grp. NC, LLC*, 2011 WL 4715155, at *5; *First Nat. Ins. Co. of America*, 771 F.Supp.2d at 576. Moreover, the context of this case centers on an indemnity agreement in the public construction setting, and there is a public interest "to encourage sureties to continue to provide bonds for public construction contracts." *First Nat. Ins. Co. of America*, 771 F.Supp.2d at 576.

In sum, there are two strong factors that demonstrate the public interest is in favor of granting the equitable relief in this case.

E. Bond

Lastly, Federal Rule of Civil Procedure 65(c) requires that federal district courts must fix a bond whenever it grants a preliminary injunction as, "[t]he court may issue a preliminary injunction or a temporary restraining order *only if the movant gives security* in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P.65(c) (emphasis added). Thus, generally, the

moving party, such as Granite Re, must provide a bond in order to secure the injunction. Rule 65(c) further requires the district court to set the bond at an amount that reflects the "gravity of the potential harm to the enjoined party." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n. 3 (4th Cir. 1999). Accounting for the potential harm that defendants face, the Court sets the bond at $10,000.

## CONCLUSION

In conclusion, Granite Re's motion for a preliminary injunction is GRANTED. [DE 3]. Defendants are hereby ORDERED to: (1) within thirty (30) days of the date of entry of this order, provide Granite Re $3,000,000 in collateral security pursuant to the Indemnity Agreement and Granite Re's August 4, 2026, Collateral and Records demand; (2) within seven (7) days of the date of entry of this order, provide Granite Re and its representatives full and complete access to all financial books, records, and accounts maintained by defendants or on their behalf; (3) within seven (7) days of the date of entry of this order, furnish a full and complete accounting of all assets owned by defendants, or in which any defendant has had an interest, since September 7, 2018, and the disposition of those assets; and (4) the defendants are prohibited from selling, transferring, disposing of, diverting, or encumbering assets that could be pledged as collateral.

This relief is conditioned upon Granite Re posting a bond with the Clerk in the amount of $10,000.

SO ORDERED, this 23 day of October, 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE